**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

CARLOS ABREU,

                     Petitioner,

        v.                                       No. 11-CV-839
                                              (LEK/CFH)

JOHN LEMPKE, Superintendent,

                     Respondent.
_____

**APPEARANCES:**                    **OF COUNSEL:**

CARLOS ABREU
99-A-3027
Petitioner Pro se
Upstate Correctional Facility
P.O. Box 2001
Malone, New York 12953


HON. ERIC T. SCHNEIDERMAN         THOMAS B. LITSKY, ESQ.
Attorney General for the               Assistant Attorney General
  State of New York
Attorney for Defendant
The Capitol
Albany, New York 12224-0341


**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

    Petitioner pro se Carlos Abreu ("Abreu") is currently an inmate in the custody of the

New York State Department of Correctional and Community Supervision ("DOCCS") at

Upstate Correctional Facility ("Upstate").  On May 14, 1999, after a non-jury trial in the New

_____

     [1]  This matter was referred to the undersigned for report and recommendation
pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

York County Supreme Court, Abreu was convicted of two counts of assault in the first-degree, attempted rape in the first-degree, and reckless endangerment in the second-degree. See People v. Abreu, 283 A.D.2d 194, 194 (1st Dep't 2001). Abreu was sentenced to, and is presently serving, concurrent terms of seven years for each count of assault, five years for attempted rape, and one year for reckless endangerment. Id. Abreu does not contest his judgment of conviction, but now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the loss of good time credits resulting from thirty-seven Tier III prison disciplinary hearings totaling approximately 217 months. See Am. Pet. (Dkt. No. 8) at 4; Pet'r's Mem. (Dkt. No. 8-1) at 4–38. For the reasons that follow, it is recommended that the amended petition be denied.

## I. Background

In his memorandum of law in support of his amended petition, Abreu challenged thirty-seven disciplinary hearing dispositions, listing their dates along with the dates of when the Commissioner affirmed them. Abreu also submitted to the Court a list of ninety-six state court cases indicating himself as a party. While Abreu failed to inform the Court which case corresponds to which disciplinary hearing, respondent contacted DOCCS's counsel in an effort to match the Article 78 petitions to the challenged hearing dispositions. Resp't's Mem. (Dkt. No. 25) at 25. Further, respondent also conducted searches in the Office of the Attorney General's database and litigation files involving Abreu, as well as Westlaw and the New York State Unified Court System eCourts database, in an attempt to determine

whether Abreu filed any actions concerning the dispositions at issue.[2] Id. The following incorporates respondent's findings submitted as exhibits to the Court.

**A.  Hearing Dispositions Between September 18, 2002 and July 18, 2008**

Abreu challenges twelve disciplinary hearing dispositions dated between September 18, 2002 and July 18, 2008.  Misbehavior reports were lodged against Abreu for exhibiting lewd conduct, harassment, assaulting a staff member, interfering with an employee, failing to follow direct orders, creating a disturbance, committing an unhygienic act, littering, and wasting food.  Pet'r's Mem. ¶¶ 1–11.  Abreu was found guilty of all charges and penalized with a total loss of sixty-six months of good time credits.  Id.  The Commissioner affirmed the penalties between November 14, 2002 and September 17, 2008.  Id.

On August 26, 2008, proceeding pro se, Abreu filed a New York Civil Practice Law and Rules ("CPLR") Article 78 petition ("Article 78") in the Albany County Supreme Court, challenging what appears to be twenty-five prison hearing dispositions, which included the twelve dispositions mentioned above.  Dkt. Nos. 22-1 at 3, 22-3 at 3.  By Decision and Order, the Albany County Supreme Court dismissed the Article 78, permitting Abreu to serve an amended petition complying with pleading requirements pursuant to CPLR § 3014.  Dkt. No. 22-3 at 4.  On March 20, 2009, Abreu filed an amended Article 78.  Dkt. No. 22-4.  Although the copy of the amended Article 78 is difficult to comprehend, it appears that Abreu claimed that:  (1) his due process rights under the Fifth and Fourteenth Amendments

---

[2]  NEW YORK STATE UNIFIED COURT SYSTEM, ECOURTS, http://iapps.courts.state.ny.us/webcivil/ecourtsMain (last visited January 22, 2013).

were violated because Special Housing Unit ("SHU") sentences were imposed;[3] (2) his right to be free from cruel and unusual punishment under the Eighth Amendment was violated in connection with the loss of good time credits; (3) without providing factual support, his equal protection rights under the Fourteenth Amendment were violated; and (4) the imposition of good time credit penalties was retaliatory conduct for his filing of grievances.  Id. ¶¶ 11(C), 13, 17–19, 26.

By Order dated May 29, 2009, the Albany County Supreme Court dismissed Abreu's amended Article 78 petition in its entirety.  Dkt. No. 22-6.  The court dismissed eleven of the twelve dispositions as untimely pursuant to CPLR § 217(1).[4]  Id. at 5.  The remaining disposition dated July 25, 2008 was dismissed because the court found that Abreu's "unspecified and conclusory allegations . . . [lacked] factual support . . . [and] still d[id] not satisfy basic pleading requirements."  Id. (citing Johnson v. Goord, 290 A.D.2d 844, 844–45 (3d Dep't 2002)).

Abreu appealed the May 29, 2009 decision to the Appellate Division, Third Department, challenging, in relevant part, the dismissal of his petition based on timeliness and the failure to conform to statutory pleading requirements.  Dkt. No. 22-7 at 3–5.  By Memorandum and Order dated April 1, 2010, the Appellate Division found that Abreu's challenges to his

---

[3]  SHUs exist in all maximum and certain medium security facilities.  The units "consist of single-occupancy cells grouped so as to provide separation from the general population . . . ."  N.Y. COMP. CODES R. & REGS. tit 7, § 300.2(b).  Inmates are confined in a SHU as discipline, pending resolution of misconduct charges, for administrative or security reasons, or in other circumstances as required.  Id. at pt. 301.

[4]  Generally, an Article 78 proceeding "must be commenced within four months after the determination to be reviewed becomes final and binding upon the petitioner . . . ." CPLR § 217(1).

disciplinary dispositions were properly dismissed.  Dkt. No. 22-9 at 3.  On a separate claim

concerning the denial of Abreu's grievance challenging the unavailability of sex offender

treatment programs in prison, the Appellate Division, finding that Abreu had alleged a cause

of action, remitted the claim to the lower court for further disposition.[5]  Id.  Abreu appealed

the decision to the New York State Court of Appeals as of right.  Dkt. No. 22-10.  On

September 21, 2010, the Court of Appeals dismissed the appeal "upon the ground that the

order appealed from does not finally determine the proceeding within the meaning of the

Constitution."  Dkt. No. 22-11 at 2.


### B.  Hearing Disposition Dated April 4, 2009

A misbehavior report dated March 23, 2009 was lodged against Abreu for failure to

follow a direct order, destruction of state property, and failure to comply with search and

frisk procedures.  Pet'r's Mem. ¶ 12.  On April 4, 2009, Abreu was found guilty of all

charges and penalized with a three-month loss of good time credits.  Id.  On May 29, 2009,

the Commissioner affirmed the disposition.  Id.

On September 10, 2009, proceeding pro se, Abreu filed an Article 78 in the Albany

County Supreme Court.[6]  See Dkt. No. 22-22.  Abreu argued that his due process rights

---

[5]  Upon the order to remit the claim to the supreme court, the supreme court found "that the denial of [Abreu's] grievance was well founded and completely rational," and that "[Abreu's] request for mental health services and counseling ha[d] been satisfied."  Dkt. No. 22-13 at 3–4.  For the reasons discussed infra, the claim is statutorily tolled. Additionally, because this claim did not affect or result in Abreu's loss of good time credits, the claim is not pertinent to Abreu's habeas petition before this Court.

[6]  Respondent was unable to locate Abreu's Article 78 petition for the particular hearing disposition, nor did Abreu provide the Court with a copy of it.  Resp't's Mem. at 15. However, respondent submitted to the Court filings related to the Article 78 proceeding.

were violated because the hearing was held outside his presence.  Dkt. No. 22-24 at 3.  By Decision, Order, and Judgment dated February 10, 2010, the court dismissed the petition, finding that the hearing officer properly continued the hearing in Abreu's absence because Abreu had "refused to attend the . . . hearing despite being advised of the consequences of not attending."  Id. (citing Morris v. Goord, 50 A.D.3d 1327, 1327–28 (3d Dep't 2008) (collecting cases)).

Abreu appealed the February 10, 2010 decision to the Appellate Division, arguing that his due process rights were violated when the underlying accusations of the misbehavior report were "speculative" and he was denied:  (1) an opportunity to attend it; (2) an impartial hearing officer; (3) the opportunity to present a defense at his hearing; (4) an inmate assistant to help him investigate his defense; (5) a Spanish interpreter; and (6) relevant documentary evidence.[7]  Dkt. No. 22-25 at 52–64.  By Memorandum and Order dated May 19, 2011, the Appellate Division found "no evidence that [Abreu] was deprived of his right to attend the disciplinary hearing[].  At [the] disciplinary hearing, the escort officer[] testified that [Abreu] refused to attend, despite being advised that the hearing[] would proceed in his absence."  Dkt. No. 22-28 at 4 (citations omitted).  Because of his failure to attend the hearing, Abreu "has failed to preserve any procedural challenges to the manner in which those hearings were conducted."  Id. (citing McFadden v. Dubray, 61 A.D.3d 1170, 1171 (2009); Cooper v. Selsky, 43 A.D.3d 1254, 1255 (2007), appeal dismissed, 9 N.Y.3d 1026 (2008)).

---

Dkt. Nos. 22-22, 22-23.

[7]  Abreu did not present the claim that he was denied the opportunity to call witnesses, presumably because he did not attend the hearing.

Abreu sought to appeal the Appellate Division decision to the Court of Appeals. Dkt. No. 22-31. Respondent submitted a letter to the court, arguing that Abreu's application was untimely made. Dkt. No. 22-30. By Order dated November 15, 2010, the Court of Appeals dismissed the appeal as untimely. Dkt. No. 22-31 at 2–3.

### C.  Hearing Disposition Dated August 6, 2009

On August 6, 2009, Abreu was found guilty of committing an unhygienic act, making threats, and creating a disturbance. Pet'r's Mem. ¶ 13. He was penalized with a six-month loss of good time credits. Id. On October 23, 2009, the Commissioner affirmed the disposition. Id.

On February 23, 2010, proceeding pro se, Abreu filed an Article 78 in the Albany County Supreme Court. Dkt. No. 22-32. Abreu argued that:  (1) the underlying misbehavior report contained false statements and fabricated allegations; (2) the hearing officer failed to make certain that he refused to be present during the hearing; (3) the hearing officer threatened his witnesses to not attend the hearing and testify; (4) he was denied a Spanish-speaking inmate assistant; and (5) the assistant assigned to him refused to either interview certain witnesses or provide him with statements of such witnesses. Id. at 11–15.

By Decision, Order, and Judgment dated July 12, 2010, the court dismissed the Article 78 because the proceeding was time-barred and Abreu had waived any right to challenge procedural irregularities when he refused to attend the hearing. Dkt. No. 22-35 at 4–5 (citing Grant v. Senkowski, 95 N.Y.2d 605, 607–08 (2001); Lebron v. Goord, 288 A.D.2d 583, 584 (3d Dep't 2001)). Further, the court found that Abreu waived any claim based on the denial of a Spanish-speaking employee assistant because the claim was not raised in

7

his administrative appeal.  Id. at 5.  Finally, any claims concerning Abreu's inmate assistant lacked factual support based on a review of the inmate employee assistance form and the production of Abreu's requested documents.  Id.

On October 21, 2010, Abreu moved for leave to file a late notice of appeal.  Dkt. No. 22-36.  By Decision and Order dated January 10, 2011, the Appellate Division denied the motion.  Dkt. No. 22-37.  Abreu appealed that determination to the Court of Appeals, which was dismissed on May 13, 2011 for want of prosecution because Abreu failed to timely file necessary papers pursuant to the New York Rules of Court § 500.12.[8]  Dkt. No. 22-39 at 3.

### D.  Hearing Disposition Dated January 15, 2011

A misbehavior report dated January 15, 2011 was lodged against Abreu for exhibiting lewd conduct.  Pet'r's Mem. ¶ 21.  On February 3, 2011, Abreu was found guilty of the charge and penalized with a six-month loss of good time credits.  Id.  On April 22, 2011, the Commissioner affirmed the disposition.  Id.

On July 16, 2011, proceeding pro se, Abreu filed an Article 78 in the Albany County Supreme Court.  Dkt. No. 22-40.  Abreu contended that the hearing officer denied him a Spanish-speaking interpreter and assistant and false accusations were made against him in retaliation for his filing of grievances against corrections staff.  Id. at 21–22, 26–27, 37.  Respondent moved for an order vacating the court's prior order granting Abreu in forma pauperis status.  Dkt. No. 22-41 at 2.  By Decision and Order dated November 4, 2011, the

---

[8]  In relevant part, the court rules provide that, in the absence of a scheduling letter, an appellant must serve and file his papers within sixty days after he appeals "by (1) filing a notice of appeal in the place and manner required by CPLR 5515, [or] (2) entry of an order granting a motion for leave to appeal in a civil case . . . ."  N.Y. Cᴛ. R. § 500.12(b).

8

court found Abreu's numerous submissions lengthy and meritless and vacated its prior order. Dkt. No. 22-46 at 3. Abreu was granted sixty days to obtain an attorney's certificate of merit in order to move forward on that particular petition and avoid an automatic vacation. Id. at 4. However, the certificate of merit was never filed. See Litsky Decl. (Dkt. No. 24-1) ¶ 8.

### E. Hearing Disposition Dated April 7, 2011

A misbehavior report dated March 17, 2011 was lodged against Abreu for interference with an employee, harassment, failing to follow a direct order, and exhibiting lewd conduct. Pet'r's Mem. ¶ 24. On April 7, 2011, Abreu was found guilty of all charges and penalized with a three-month loss of good time credits. Id. On May 31, 2011, the Commissioner affirmed the disposition. Id.

On July 3, 2011, proceeding pro se, Abreu filed an Article 78 in the Seneca County Supreme Court. Dkt. No. 22-47. By Order, the proceeding was transferred to the Appellate Division, Fourth Department, for it raised an issue of substantial evidence. Dkt. No. 22-48 at 2. By letter, the Office of the Attorney General informed the court that Abreu's disciplinary disposition was administratively reversed. Dkt. No. 22-49 at 2. By Order dated April 20, 2012, the Fourth Department dismissed this proceeding as moot. Dkt. No. 22-50 at 2.

### F. Remaining Hearing Dispositions

Abreu challenges other disciplinary hearing dispositions dated between June 3, 3010 and November 29, 2011, all of which resulted in loss of good time credits. Pet'r's Mem. ¶¶

14–20, 22–23, 25–36.  DOCCS's Special Housing/Inmate Disciplinary Programs Office

confirmed with the Office of the Attorney General that the DOCCS Commissioner had

affirmed those appeals listed as "pending" in Abreu's "Inmate Disciplinary History" and

referenced in ¶¶ 31–35 of Abreu's memorandum of law.  Dkt. No. 8-1 at 40–49; <u>see</u> Litsky

Decl. ¶ 8.  The disposition referenced in ¶ 36 of Abreu's memorandum and dated

November 29, 2011 does not correspond to any entry in the Inmate Disciplinary History.

There is nothing on the list of ninety-six state court case that matches each case to the

dispositions at issue.

## G.  Federal Habeas Petition

On June 28, 2011, Abreu filed a habeas petition with this Court.[9]  Dkt. No. 1 at 69.  On

December 5, 2011, Abreu filed an amended petition, on the grounds that:  (1) his due

process rights under the Fourteenth Amendment were violated because charges lodged

against him were false, he was denied the opportunity to both call witnesses and present

documentary evidence, the hearing officers failed to consider his mental health issues and

failed to act impartially, he was not provided the assistance of a Spanish-speaking

interpreter nor an inmate assistant, and the denial of due process was conducted in

retaliation for his filing of grievances and lawsuits against prison officials; and (2) his right to

be free from cruel and unusual punishment under the Eighth Amendment was violated

---

[9]  <u>Pro se</u> petitioners are deemed to have filed their habeas petitions on the date
they turned them over to prison officials for mailing.  <u>See</u> <u>Houston v. Lack</u>, 487 U.S. 266,
270 (1988); <u>Noble v. Kelly</u>, 246 F.3d 93, 97 (2d Cir. 2001) (extending the "prisoner mailbox
rule" to habeas petitioners), <u>cert. denied</u>, 534 U.S. 886 (2001).  To be cautious, this Court
uses June 28, 2011, the date on Abreu's original petition, as the earliest possible date
upon which Abreu could have turned over the petition to prison officials for mailing.

because as a result of those hearings he suffered a loss of good time credits.[10]  Am. Pet. ¶¶ 40–49, 52, 55–57; Pet'r's Mem. at 4–38.

## II.  Discussion

### A.  Timeliness

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), a one-year statute of limitations period applies to the filing of federal habeas corpus petitions "by a person in custody pursuant to the judgment of a State court."  28 U.S.C. § 2244(d)(1); Cook v. N.Y. State Div. of Parole, 321 F.3d 374, 279–80 (2d Cir. 2003).  The statutory limitation period begins to run from the latest of four events:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

---

[10]  Of the thirty-seven Tier III dispositions, Abreu challenges only his loss of good time credits.  Am. Pet. at 6; Pet'r's Mem. ¶ 58.  Challenges, if any, to the conditions of confinement, such as the imposition of SHU confinement, are not cognizable on federal habeas review.  Preiser v. Rodriguez, 411 U.S. 475, 500 (1973) (holding that a writ of habeas corpus is the sole remedy for a state prisoner challenging "the very fact or duration of his physical imprisonment . . . ."); Welch v. Mukasey, 589 F. Supp. 2d 178, 183 n. 3 (N.D.N.Y. 2008) ("[Petitioner] also alleges that he is being illegally confined in the Special Housing Unit ("SHU") . . . [That] claim[], to the extent that [it] challenge[s] conditions of confinement, [is] not cognizable on habeas review." (citation omitted)).  Thus, such sanctions are not elaborated in this Report-Recommendation.

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). "A state prisoner challenging the loss of good time credits must bring an action for habeas corpus relief under 28 U.S.C. § 2254." McPherson v. Burge, No. 06-CV-1076 (GTS/VEB), 2009 WL 1293342, at *4 (N.D.N.Y. 2009) (citations omitted).[11]  In this context, to determine the date on which the factual predicate of the claim could have been discovered through the exercise of due diligence, the Second Circuit has concluded that the statute of limitations runs from when the petitioner "was notified that the administrative decision . . . had become final." Cook, 321 F.3d at 280; McPherson, 2009 WL 1293342, at *5.

    The AEDPA statutory limitation may be tolled when a "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending . . . ." 28 U.S.C. § 2244(d)(2). "[A]n application for state review is 'pending' until it has achieved final review through the state's post-conviction procedures." McPherson, 2009 WL 1293342, at *5 (citations omitted).  However, when the state application has achieved final review, the date from which the statute of limitations begins to run does not reset.  Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000).

---

[11]  All unpublished opinions cited to by the Court in this Report-Recommendation are, unless otherwise noted, attached to this Recommendation.

Here, Abreu does not challenge the judgment of his conviction, there was no state action that impeded Abreu from seeking habeas relief, and there was no issue involving the retroactive application of a newly recognized constitutional right. Thus, the statute of limitations began to run from the date on which the factual predicate of Abreu's claims could have been discovered through the exercise of due diligence, which is when Abreu was notified that the administrative decisions he challenges in this amended petition have become final.

Applying the statute of limitations in the manner as indicated above, Abreu's claims based on the six dispositions referenced in ¶¶ 1–5 are time-barred. The Commissioner affirmed the six dispositions between November 14, 2002 and April 6, 2007. While the record does not clearly inform the Court when Abreu was notified of these decisions, "there is no allegation of undue delay or any reason to believe that [Abreu] was not notified at or about the time of the decision[s]." McPherson, 2009 WL 1293342, at *5. Because Abreu did not file the Article 78 until August 26, 2008, more than one year after he learned of these dispositions, Abreu's claims based on these dispositions are untimely. Thus, Abreu's claims are partially time-barred.

A petitioner who has filed a petition past the one-year statute of limitation and does not have sufficient statutory tolling may still have his petition considered through equitable tolling. See Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir.), cert. denied, 531 U.S. 840 (2000). The "petitioner must show that extraordinary circumstances prevented him from filing his petition on time, and he must have acted with reasonable diligence throughout the period he seeks to toll." Hizbullahankhamon v. Walker, 255 F.3d 65, 75 (2d Cir. 2001) (internal

quotation marks and citations omitted).  Pro se status or ignorance of the law does not merit

equitable tolling.  Smith, 208 F.3d at 18.  In this case, Abreu does not contend, nor does the

record reflect, that an extraordinary circumstance impeded Abreu from timely filing his

petition.  Nor did Abreu exercise reasonable diligence throughout the relevant Article 78

proceedings when Abreu appealed the first proceeding from a non-final order, the second

proceeding was dismissed as untimely, and the third proceeding was dismissed for want of

prosecution.  Thus, it is recommended that the Court decline to invoke equitable tolling for

the hearing dispositions referenced in ¶¶ 1–5.

Accordingly, Abreu's claims based on the dispositions referenced in ¶¶ 1–5 of the

amended petition should be denied as time-barred.


### B.  Mootness

Article III, Section 2, Clause 1 of the United States Constitution limits the jurisdiction of

federal courts to resolve "cases" or "controversies."  U.S. Const. Article III, § 2, cl. 1.  "[T]he

mootness doctrine ensures that . . . [the petitioner's] standing persists throughout the life of

a lawsuit."  Amador v. Andrews, 655 F.3d 89, 99 (2d Cir. 2011) (citing Comer v. Cisneros,

37 F.3d 775, 798 (2d Cir. 1994)).  Thus, "if the basis for the claim has been rectified or if the

[petitioner] is no longer subject to the challenged conduct, the claim is moot."  Id. at 99–100

(citations omitted).  Abreu makes his constitutional claims, in part, based on a hearing

disposition dated April 7, 2011 that was administratively reversed on April 20, 2012.  Pet'r's

Mem. ¶ 24.  Because Abreu seeks only to restore his good time credits from the April 7,

2011 disposition, which has been reversed, resulting in Abreu no longer be subjected to

such a deprivation, Abreu's claims concerning that disposition is now moot.

14

Accordingly, Abreu's amended petition based on the disposition referenced in ¶ 24 of the amended petition should be denied.

## C. Exhaustion

It is well-settled that before seeking habeas review, a petitioner must first exhaust all state remedies. 28 U.S.C. § 2254(b), (c); <u>Shabazz v. Artuz</u>, 336 F.3d 154, 160 (2d Cir. 2003) (quoting <u>Aparicio v. Artuz</u>, 269 F.3d 78, 89 (2d Cir. 2001)). Specifically, § 2254(b)(1) directs that

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(I) there is an absence of available State corrective process; or
>
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1)(A) & (B).

The exhaustion principle is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights." <u>Coleman v. Thompson</u>, 501 U.S. 722, 731 (1991). Thus, pursuant to § 2254(b)(1)(A), "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999). State remedies are "<u>properly</u> exhausted" when the petitioner has "fairly presented" to the

15

state court, <u>O'Sullivan</u>, 526 U.S. at 848, "both the factual and legal premises of the claim he asserts in federal court." <u>Daye v. Attorney General of New York</u>, 696 F.2d 186, 191 (2d Cir. 1982) (citations omitted).  The petitioner may fairly present the constitutional nature of his claim by

> (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, [or] (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

<u>Id.</u> at 194.  The petitioner bears the burden of proving exhaustion.  <u>Colon v. Johnson</u>, 19 F. Supp. 2d 112, 119–20 (S.D.N.Y. 1998) (citations omitted).

In New York, a challenge to a prison disciplinary disposition must be made through an Article 78 petition, ordinarily in state supreme court.  CPLR § 7802(b);[12] <u>see, e.g.</u>, <u>O'Sullivan v. Fischer</u>, 87 A.D.3d 1229, 1229 (3d Dep't 2011) (deciding an inmate's challenge to prison disciplinary determinations through an Article 78); <u>Ifill v. Fischer</u>, 79 A.D.3d 1322, 1322 (3d Dep't 2010) (same).  Upon receiving an adverse determination, the petitioner may seek an appeal by permission from the Appellate Division.  CPLR § 5701(b)(1) & (c).  If the petitioner receives an adverse ruling from the Appellate Division, then he may seek leave to appeal to the Court of Appeals.  CPLR § 5602(a).  When an Article 78 raises a "substantial evidence issue," the Article 78 must be transferred directly to the appropriate Appellate Division.  CPLR § 7804(g).

In this case, Abreu has failed to meet his burden in satisfying exhaustion requirements.

---

[12]  Section 7802(b), in relevant part, provides that, "a proceeding . . . may be maintained against an officer exercising judicial or quasi-judicial functions . . . ."  <u>Id.</u>

First, in addition to being partially untimely, the dispositions referenced in ¶¶ 1–11 of the amended petition are only partially exhausted.  While Abreu has presented his First and Eighth Amendment claims in his Article 78 with regard to the loss of good time credits, Abreu failed to make a due process claim based on the grounds he asserted in his amended petition.  In fact, Abreu only presented to the state court a due process claim based on his SHU confinement, which is not cognizable on federal habeas review.  Preiser, 411 U.S. at 500.  Thus, Abreu has failed to satisfy his burden in proving complete exhaustion of state remedies concerning these dispositions.  Second, Abreu's claims based on the dispositions referenced in ¶¶ 12, 13 and 21 are unexhausted as those claims were never raised before the Court of Appeals.  In the first instance, Abreu failed to timely file an application to the Court of Appeals.  In the second instance, Abreu failed to timely appeal to the Appellate Division and the Court of Appeals dismissed the appeal from the Appellate Division for want of prosecution.  In the third instance, Abreu failed to file a certificate of merit to continue the Article 78 proceeding.  Therefore, Abreu has failed to satisfy his burden in proving complete exhaustion of state remedies concerning these dispositions.  Lastly, the dispositions referenced in ¶¶ 14–20, 22–23, 25–36 must be considered unexhausted.  Abreu does not provide any evidence proving that these dispositions were exhausted and respondent's efforts to prove their exhaustion or non-exhaustion came to no avail.  Because Abreu has failed to meet his burden, and the record evidence does not reflect otherwise, Abreu's claims based on these dispositions are unexhausted.

Nevertheless, a claim that was not fairly presented to the state courts and does not satisfy the requirements of § 2254(b)(1) may still be "deemed" exhausted by the habeas court "if it is clear that the state court would hold the claim procedurally barred."  Grey v.

<u>Hoke</u>, 933 F.2d 117, 120 (2d Cir. 1991) (collecting cases); <u>Aparicio</u>, 269 F.3d at 90 ("When a claim has never been presented to a state court, a federal court may theoretically find that there is an 'absence of available State corrective process' under § 2254(b)(1)(B)(I) if it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile.").

Here, the Court may "deem" exhausted certain hearing dispositions above. The Article 78 connected to the dispositions in ¶¶ 1–11 was dismissed because the order from which appeal was taken was not final. The Court of Appeals dismissed the Article 78 connected to the disposition in ¶ 12 because the appeal was untimely filed and the disposition in ¶ 13 for want of prosecution. The Article 78 connected to the disposition in ¶ 21 was automatically vacated because Abreu failed to file an attorney's certificate of merit. Because Abreu can no longer return to a state forum to exhaust these claims due to the six-month statute of limitations for commencing a new action based on the termination of an action, these claims are procedurally barred and deemed exhausted.[13] CPLR § 205.

Accordingly, while Abreu's claims based on the dispositions in ¶¶ 14–20, 22–23, 25–36 are unexhausted, the dispositions in ¶¶ 1–11, 12, 13, and 21 are deemed exhausted.


### D.  Independent and Adequate State Law Grounds

Federal habeas review of a question of federal law decided by a state court is prohibited if the state court rested its judgment "on a state law ground that is independent of the federal question and adequate to support the judgment." <u>Coleman</u>, 501 U.S. at 729

---

[13]  No Article 78 was identified in connection with the dispositions in I(F).

(citations omitted) (noting that federal court resolution of the federal issue would merely be advisory where the state judgment is supported by independent and adequate state grounds); see also Harris v. Reed, 489 U.S. 255, 261–62 (1989); Cotto v. Herbert, 331 F.3d 217, 238 (2d Cir. 2003); Garcia v. Lewis, 188 F.3d 71, 76 (2d Cir. 1999); Levine v. Comm'r of Corr. Servs., 44 F.3d 121, 126 (2d Cir. 1995).  "This rule applies whether the state law ground is substantive or procedural."  Coleman, 501 U.S. at 729 (citation omitted). "Because it can be difficult to determine if the state law discussion is truly an independent basis for decision or merely a passing reference, . . . such reliance on state law must be clear from the face of the opinion."  Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 809 (2d Cir. 2000) (internal quotation marks omitted) (citing Coleman, 501 U.S. at 732, 735).

In addition to being "independent," the state procedural bar must also be "adequate." Cotto, 331 F.3d at 239.  A violation of "firmly established and regularly followed" state rules would ordinarily be adequate to bar federal review.  Id. at 239–40 (internal quotation marks omitted).  In an "exceptional case[] in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question[,]" the court considers three guideposts in determining whether a procedural bar is adequate to preclude federal review of claims raised in the petition:

> (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had "substantially complied" with the rule given "the realities of trial," and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest.

19

Id. at 240.

In this case, all the Article 78 proceedings commenced for the dispositions referenced in Abreu's amended petition are barred by adequate and independent state law grounds. First, the claims pertinent to ¶¶ 1–11 were dismissed as time-barred and for failure to conform to basic pleading requirements.  The opinion dismissing the Article 78 petition was clear on its face in explaining the four-month limitation period as a time-bar to Abreu's claims, citing both CPLR § 217 and Smith v. Goord, 42 A.D.3d 839, 839 (3d Dep't 2007). See also, Gathers v. Artus, 59 A.D.3d 795, 795 (3d Dep't 2009) (applying § 217 in dismissing Article 78 proceedings that challenged prison disciplinary dispositions). Additionally, a federal habeas court has recognized that "[t]his limitation period has a fair and substantial basis in state law in that it is clearly codified in the C.P.L.R. and is not novel and unforeseeable."  Scales v. New York State Div. of Parole, 396 F. Supp. 2d 423, 430 (S.D.N.Y. 2005) (internal quotation marks and citations omitted).  Similarly, state courts regularly follow the firmly established state rule of CPLR § 3013, dismissing pleadings that do not "give the court and parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved and the material elements of each cause of action or defense."  CPLR § 3013; see, e.g., Pettus v. New York State Dep't of Corr. Servs., 77 A.D.3d 996, 996 (3d Dep't 2010) (affirming dismissal of an Article 78 proceeding based on failure to conform to the pleading requirements in CPLR § 3013); Escalera v. State, 67 A.D.3d 1137, 1137 (3d Dep't 2009) (same).  Therefore, these independent and adequate state laws properly prevent the Court from reviewing the Article 78 for dispositions referenced in ¶¶ 1–11.

As for the remaining Article 78 petitions, they were dismissed because they were time-

barred or that procedural challenges were not preserved for appeal. First, the timeliness in making an appeal is a regularly followed state rule. People v. Nettles, 30 N.Y.2d 841, 844 (1972) (subjecting a habeas corpus appeal to dismissal because it was untimely made). Second, it is a firmly established and regularly followed state practice that a claim must be raised at a hearing in order to preserve it on appeal. James v. Kentucky, 466 U.S. 341, 348–49 (1984); Lewis v. Lape, 90 A.D.3d 1259, 1260 (3d Dep't 2011) (inmate's contentions not raised at his prison disciplinary hearings were unpreserved for court's review); Vidal-Ortiz v. Fischer, 84 A.D.3d 1627, 1628 (3d Dep't 2011) (same); Hamilton v. Bezio, 76 A.D.3d 1125, 1126 (3d Dep't 2010) (same). Thus, the Court is barred from reviewing the Article 78 petitions in dispositions referenced in ¶¶ 1–11, 12, 13, and 21.

A claim that is procedurally defaulted due to an adequate and independent state law ground may avoid the procedural bar if the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750; DiGuglielmo v. Smith, 366 F.3d 130, 135 (2d Cir. 2004) (citations omitted); Ramirez v. Attorney General of New York, 280 F.3d 87, 94 (2d Cir. 2001); Aparicio, 269 F.3d at 90. "Cause" requires a showing that "some objective factor external to the defense impeded counsel's efforts to raise the claim in state court" or that the basis for a claim was not reasonably available to counsel. Levine, 44 F.3d at 127 (internal quotation marks and citations omitted). As for a miscarriage of justice, this necessarily involves a showing that the petitioner is actually innocent. Sweet v. Bennett, 353 F.3d 135, 141 (2d Cir. 2003). Here, neither cause and prejudice nor a miscarriage of justice is present in the record. There is nothing in the record indicating that an objective and external factor impeded

Abreu's efforts in raising his claims in state court. Further, no new evidence tending to prove Abreu's innocence with respect to the hearing dispositions was submitted to the Court. Thus, Abreu's claims are barred from federal habeas review.

Accordingly, Abreu's amended petition should be denied because his claims are procedurally defaulted.

## E. Merits

"An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2), accord, Rhines v. Weber, 544 U.S. 269, 277 (2005). However, § 2254(b)(2) "does not provide a standard for determining when a court should dismiss a petition on the merits rather than requiring complete exhaustion." Otero v. Stinson, 51 F. Supp. 2d 415, 420 (S.D.N.Y. 1999) (internal quotation marks omitted) (collecting cases). A majority of district courts in the Second Circuit "have expressed the test as whether the unexhausted claim is 'patently frivolous.'" Cummings v. Conway, No. 09-CV-740 (MAT), 2011 WL 2516581, at *4 (W.D.N.Y. June 23, 2011) (collecting cases). On the other hand, a minority of courts exercised discretionary review when "it [was] perfectly clear that the [petitioner] d[id] not raise even a colorable federal claim." Id. (internal quotation marks omitted) (collecting cases). Under either standard, Abreu has failed to establish that he is entitled to habeas relief.

## i. Legal Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132,

110 Stat. 1214 (1996) ("AEDPA"), a federal court may grant a writ of habeas corpus only if

the state court's adjudication on the merits

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412 (2000); Hawkins v. Costello, 460

F.3d 238, 242 (2d Cir. 2006); DeBerry v. Portuondo, 403 F.3d 57, 66 (2d Cir. 2005).

The Supreme Court has given independent meaning to the "contrary to" and

"unreasonable application" clauses in § 2254(d)(1). Williams, 529 U.S. at 405. "Under the

'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a

conclusion opposite to that reached by [the Supreme] Court on a question of law or if the

state court decides a case differently than [the Supreme] Court has on a set of materially

indistinguishable facts." Id. at 412–13. As for the "unreasonable application" clause, a writ

may be granted if "the state court's application of clearly established federal law was

objectively unreasonable." Id. at 409, 413. "[A]n unreasonable application of federal law is

different from an incorrect application of federal law." Id. at 410. In addition, the statutory

phrase "clearly established Federal law . . . refers to the holdings, as opposed to the dicta,

of [the Supreme] Court's decisions . . . ." Id. at 412 (internal citations omitted).

The petitioner bears the burden of proving, by a preponderance of the evidence, that

"he is in custody in violation of the Constitution or laws or treaties of the United States." 28

U.S.C. § 2254(a); see also Smalls v. Batista, 191 F.3d 272, 278 (2d Cir. 1999); Jones v.

Vacco, 126 F.3d 408, 415 (2d Cir. 1997). Further, when evaluating a habeas petition, "a

determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); DeBerry, 403 F.3d at 66.


### ii. Fourteenth Amendment

Abreu claimed that he was denied due process at thirty-seven disciplinary hearings because:  (1) the charges lodged against him were false; (2) he was denied the opportunity to call witnesses and present documentary evidence; (3) the hearing officers failed to consider his mental health issues and failed to act impartially; (4) he was not provided the assistance of a Spanish-speaking interpreter nor an inmate assistant; and (5) the denial of due process was conducted in retaliation for his filing of grievances and lawsuits against prison officials.  Am. Pet. ¶¶ 40–49, 52, 55–57.  In addition, Abreu contends that his equal protection rights under the Fourteenth Amendment were violated.  Id. ¶ 59.

Abreu has failed to show that the state court determinations of his Article 78 petitions were either contrary to, or applied unreasonably, clearly established federal law.  Rule 2(c) of the Rules Governing Habeas Corpus Cases mandates "the petitioner to specify all the grounds for relief available to [him] and to state the facts supporting each ground."  Mayle v. Felix, 545 U.S. 644, 649 (2005) (internal quotations marks omitted).  While Abreu cited case law and stated conclusory allegations against the respondent, Abreu does not assert any facts "allowing [for the] application of a legal principle involving 'custody in violation of the constitution or laws or treaties of the United States, . . . .'"  U.S. ex rel. Holes v. Mancusi, 423 F.2d 1137, 1142 (2d Cir. 1970) (citing 28 U.S.C. § 2254(a) (Supp. IV 1965–68)).  As previously indicated, Abreu failed to allege which due process violation

corresponds to each of the thirty-seven disciplinary dispositions. The state court decisions correctly applied federal precedent when they indicated that Abreu did not allege how any of the disciplinary charges were false, what evidence or witnesses were barred from being presented at the hearing, and why the exclusion of such evidence adversely affected either the outcome of the hearings or Abreu's ability to present a defense. See also Resp't's Mem. at 38. The record is devoid of any facts explaining how Abreu was entitled to have his mental health issues considered by the hearing officers or that interpretation or inmate assistance was warranted.[14] To the extent that the underlying state court proceedings did not dismiss Abreu's claims based on their merits, those claims were dismissed for procedural reasons or Abreu's failure to articulate a claim. Thus, Abreu still failed to advance anything more than conclusory allegations, which cannot stand in a habeas petition.

Further, the same lack of support exists for Abreu's retaliation claim in connection with his due process claims. As for Abreu's equal protection claim, it resides in a single, conclusory statement, without any factual support elsewhere in Abreu's submissions to the Court. Thus, despite Abreu's vague and conclusory allegations, Abreu has failed to establish that he is entitled to habeas relief. White v. Herbert, No. 02-CV-0439 (NPM), 2006 WL 3728878, *4 (N.D.N.Y. Dec. 15, 2006) (collecting cases on the dismissal of petitions containing only vague or conclusory allegations); Skeete v. People of New York

---

[14] The only hearing transcript in the record was submitted by respondent. The transcript involved the misbehavior report connected to the disposition referenced in ¶ 12, which indicated that Abreu "shook his head no" when asked to attend his hearing. Dkt. No. 22-23 at 31–32. See also Inmate Refusal Forms (Dkt. No. 22-23) at 77–79 (noting that when asked to attend his hearing, Abreu "state[d] nothing, no response," "looked at officers but refused to respond," and "shook his head 'no.'").

<u>State</u>, No. 03-CV-2903, 2003 WL 22709079, at *2 (E.D.N.Y. Nov. 17, 2003) ("[V]ague, conclusory and unsupported claims do not advance a viable claim for <u>habeas corpus</u> relief." (citation omitted)).  Similarly, to the extent that Abreu has alleged his loss of good time credits implicated a liberty interest protected by the Fourteenth Amendment, such a claim must also fail for its vagueness and conclusory nature.[15]  Therefore, in deciding Abreu's Article 78 petitions, the state courts did not render decisions that either were contrary to, or unreasonably applied, clearly established federal law and Abreu's Fourteenth Amendment claims must fail as a matter of law.

Accordingly, Abreu's amended petition on these grounds should be denied.


### iii.  Eighth Amendment

Abreu claimed that the good time credit penalties resulting from the hearing dispositions were so excessive as to constitute cruel and unusual punishment in violation of the Eighth Amendment.  In total, Abreu lost approximately 217 months of good time credits, or eighteen years.

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment."  U.S. Const. amend. VIII.  There is "[n]o federal constitutional issues . . .

_____

[15]  To succeed under a due process claim based on the loss of good time credits, the petitioner must establish, <u>inter alia</u>, that:  (1) he was not provided a written notice of the disciplinary charges at least twenty-four hours in advance of the hearing; (2) a non-neutral hearing body conducted the hearing; (3) he was not afforded the opportunity to present evidence and call witnesses; (4) he was not granted assistance to understand and prepare his defense; and (5) the factfinder failed to provide a written statement of the evidence relied upon in making his decision and the reasons for the decision.  <u>See</u> <u>Wolff v. McDonnell</u>, 418 U.S. 539, 563–67 (1974).  Abreu asserted no facts to establish the aforementioned elements.

[where] the sentence is within the range prescribed by state law." <u>White v. Keane</u>, 969 F.2d 1381, 1383 (2d Cir. 1992) (citation omitted).  Under New York law, after an inmate is found guilty of the charges lodged against him at a disciplinary hearing, a hearing officer may exercise his discretion in "limit[ing] an inmate to noncontact visiting in lieu of suspending all visiting privileges" by imposing a loss of good time credits.  7 New York Codes, Rules and Regulations ("NYCRR") § 254.7(2)(d)(ix).  Penalties following a disciplinary hearing run consecutively unless the hearing officer directs that the penalty should run concurrently.  7 NYCRR § 254.7(2)(d)(xi)(2).  It has been concluded that

> [G]ood time credit is a creation of state law and not the federal
> constitution.  Therefore, loss of good time credit, in the absence
> of due process violations does not raise a constitutional issue.
> In the eighth amendment context, loss of good time credit does
> not amount to cruel and unusual punishment.

<u>Miller v. Lopes</u>, No. H-84-1133 (TEC), 1986 WL 1707, at *3 (D. Conn. Jan. 27, 1986) (internal quotation marks omitted); <u>see</u> <u>Jackson v. Sneizek</u>, 342 F. App'x 833, 836 (3d Cir. Aug. 20, 2009) (per curiam) (holding that the loss of 406 days of good time credits did not amount to an Eighth Amendment violation because the penalty was within the limits prescribed for the offense at issue and not disproportionate to the severity of the offense) (citations omitted).

In this case, the good time credit penalties were within the hearing officers' discretion to impose as prescribed under New York law and the hearing officers could certainly impose consecutive penalties.  Further, because Abreu's due process claim cannot stand, the penalties that he now challenges do not constitute cruel and unusual punishment. Therefore, it cannot be said that in deciding Abreu's Article 78 petitions, the state courts rendered decisions that were either contrary, or unreasonably applied, to clearly established

federal law and Abreu's Eighth Amendment claim must fail as a matter of law.

Accordingly, Abreu's amended petition on this ground should be denied.

## III. Conclusion

For the reasons stated above, it is hereby:

1.  **RECOMMENDED** that Abreu's amended petition for a writ of habeas corpus (Dkt. No. 8) be **DENIED**; AND

2.  Furthermore **RECOMMENDED** that no certificate of appealability should be issued with respect to any of Abreu's claims as Abreu has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2).  See 28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."); see also Lucidore v. New York State Div. of Parole, 209 F.3d 107, 112 (2d Cir. 2000).

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated:  January 23, 2013
       Albany, New York

Christian F. Hummel
U.S. Magistrate Judge